# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| NATALIE BURKE, <br><br> *Plaintiff,* <br><br> v. <br><br> CHS MIDDLE EAST, LLC, <br><br> *Defendant.* | Case No. 1:18-cv-01605-LO-JFA <br> Hon. Liam O'Grady |

## ORDER & MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion to Dismiss (Dkt. 6). The motion was fully briefed and the Court dispensed with oral argument. The Court carefully reviewed the pleadings, case law, and the timeline provided in Plaintiff's opposition brief. For the reasons that follow, and for good cause shown, Defendant's Motion to Dismiss (Dkt. 6) is hereby **GRANTED** as to Counts I, III, and IV, and **DENIED** as to Count II.

## I. BACKGROUND[1]

Plaintiff Natalie Burke began working for Defendant CHS Middle East, LLC as a registered nurse in Basra, Iraq in August 2015. Compl. ¶¶ 6–8.

In August 2016, Lee Workman became Plaintiff's direct supervisor. *Id.* at ¶ 14. Workman was promoted to Nurse Lead despite a formal complaint that he had sexually harassed a female government contractor, and he continued sexually harassing women after becoming Nurse Lead. *Id.* at ¶ 15–17.

---

[1] The facts stated herein are derived from Plaintiff's Complaint. Plaintiff's alleged facts are accepted as true for the purposes of the Motion to Dismiss and all reasonable inferences are drawn in her favor. *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

In April or May 2017, Workman "began sexually harassing" Plaintiff, including by "inappropriately touching her lower back." *Id.* at ¶¶ 17, 20. Plaintiff complained about Workman's sexual harassment to the Site Lead in May or June 2017, but after an investigation, Defendant found her complaint unsubstantiated on June 16, 2017 and directed her to not discuss the investigation. *Id.* at ¶¶ 18–22. In June or July 2017, Workman began discussing the investigation. *Id.* at ¶ 23. In July 2017, Plaintiff complained to her superiors that Workman was discussing the investigation and had not been given the same instruction to keep silent. *Id.* at ¶ 24. Plaintiff also complained that Workman retaliated against her by asking her to create spreadsheets he did not ask the other two nurses to make. *Id.*

When Human Resources resolved Plaintiff's sexual harassment complaint against Workman, it noted that "unnecessarily moving [Plaintiff] to another shift or site would be perceived as retaliation." *Id.* at ¶ 22. Yet, on August 15, 2017, Plaintiff was informed she would be reassigned to Baghdad, a less desirable location, for an unspecified duration. *Id.* at ¶¶ 25–26. Defendant does not usually require nurses to "float" to different locations, especially not for more than a temporary basis to cover vacationing employees, and multiple nurses and other staff had never floated or had refused to float. *Id.* at ¶¶ 26–28. After informing Plaintiff of her transfer from Basra to Baghdad, Defendant assigned two new nurses to Basra. *Id.* at ¶¶ 30, 32.

On August 16 and 22, 2017, Plaintiff complained that her transfer was retaliation for her sexual harassment complaint and she advised Defendant's Lead Director that she would file an EEOC complaint. *Id.* at ¶¶ 29, 31. Plaintiff initiated an EEOC complaint on August 30, 2017. *Id.* at ¶ 33. On September 13, 2017, the EEO mediator called Defendant's Human Resources and management, asking when Burke would be transferred back to Basra. *Id.* at ¶ 34. On November

7, 2017, Plaintiff was notified she would be transferred back to Basra. *Id.* at ¶ 35. On December 6, 2017, Plaintiff was transferred back to Basra to again work under Workman. *Id.* at ¶ 36.[2]

On April 3, 2018, Defendant's Program Manager announced that "toxic" employees would not be renewed. *Id.* at ¶ 38. In mid-April 2018, four months after her transfer back to Basra, Plaintiff submitted her intent to renew her contract with Defendant for the fourth consecutive year. *Id.* at ¶ 37. On April 19, 2018, Defendant issued a new policy that limited contract renewals to three consecutive years as a way to get rid of "toxic" employees. *Id.* at ¶¶ 38, 43. Plaintiff later learned that Defendant considered her to be a "toxic" employee because she had complained about Workman's harassment and the subsequent retaliation against her. *Id.* at ¶ 44.

On May 21, 2018 Plaintiff was informed her contract would not be renewed, ostensibly because of Defendant's new policy. *Id.* at ¶ 45. Despite the policy, Defendant continued to renew the contracts of other employees who had not engaged in protected activity beyond their third consecutive year, even if the employee had received multiple write-ups for performance issues. *Id.* at ¶¶ 39–42. Plaintiff had always received positive performance reviews and feedback; though there were three write-ups about her, she had never been formally told about them. *Id.* at ¶¶ 7, 46.

On June 5, 2018, Plaintiff resigned because "the working conditions were intolerable." *Id.* at ¶ 48. Defendant eliminated its policy limiting contract renewals to three consecutive years within months of Plaintiff's resignation. *See id.* at ¶ 49.

---

[2] The Complaint states that Plaintiff was not transferred back to Basra until December 6, 2018, Compl. ¶ 36, but the timeline in the Complaint and later representations by Plaintiff's counsel demonstrate that she was transferred on December 6, 2017.

3

Plaintiff filed an EEO complaint on September 10, 2018 and alleges that she properly exhausted her administrative remedies. On November 29, 2018, Plaintiff filed suit against Defendant, demanding a jury trial and asserting four violations of Title VII: (1) discrimination based on sex, (2) retaliation, (3) hostile work environment based on sex, and (4) constructive discharge. Defendant moved to dismiss Plaintiff's Complaint in its entirety for failure to state a claim.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't*, 684 F.3d at 467 (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely,'" *id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), so long as the complaint states a claim that is "plausible" and not merely "conceivable," *Twombly*, 550 U.S. at 569.

A plaintiff need not plead facts constituting a *prima facie* case to survive a motion to dismiss in an employment discrimination case. *Robinson v. Loudon Cty. Pub. Sch.*, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017) (O'Grady, J.) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002)). Plaintiffs are required, however, to plead facts sufficient to raise a right to relief above the speculative level. *Id.* (quoting *Twombly*, 550 U.S. at 555). For this reason, the Court looks to the elements of a *prima facie* case for each employment discrimination claim for plausibility, not proof. *Id.*

### III. ANALYSIS

#### A. Count I: Discrimination Based on Sex.

To state a claim for discrimination under Title VII, Plaintiff must have alleged sufficient facts to plausibly establish that: (1) she is a member of a protected class, (2) her job performance was satisfactory, (3) Defendant took an adverse employment action against her, and (4) similarly-situated employees outside her protected class received more favorable treatment. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Defendant argues Plaintiff failed to sufficiently plead the third and fourth elements, and that part of Plaintiff's discrimination claim is time-barred.

Plaintiff's allegations that she suffered discrimination because Defendant did not adequately respond to her complaints against Workman's sexual harassment are time-barred. "[A]n EEOC charge must be filed within 300 days after the alleged unlawful employment practice occurred" or it will be barred by the statute of limitations. *Tomasello v. Fairfax Cty.*, 2016 WL 165708, at *7 (E.D. Va. Jan. 13, 2016) (Ellis, J.) (citing 42 U.S.C. § 2000e-5(e)(1) (Title VII)). Plaintiff has not alleged any sexual harassment by Workman after June 2017, and Defendant resolved her Human Resources complaint against Workman in mid-June 2017. Both

5

Workman's harassment and Defendant's response to her complaints about Workman's harassment occurred more than 300 days before Plaintiff filed her EEOC Charge on September 10, 2018, and thus cannot serve as a basis for a sexual discrimination claim in this suit. Even if those claims were not time-barred, failure to investigate and respond to discrimination complaints does not constitute "adverse action" in "run-of-the-mine cases such as this one." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010); *Westmoreland v. Prince George's Cty., Md.*, 876 F. Supp. 2d 594, 605 (D. Md. 2012) (holding that a failure to investigate a complaint does not qualify as an adverse employment action in a discrimination case).

Plaintiff also alleges that Defendant discriminated against her because of her sex by "treating her more harshly than it treated male employees" and by not renewing her contract. Compl. ¶¶ 55, 57. Plaintiff has not, however, alleged sufficient facts to support a plausible claim that Defendant's failure to renew her contract was due to her sex. As more fully explored below, Plaintiff has alleged facts making it plausible that Defendant's reasons for not renewing her contract were false or pretextual. Yet, even "proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the [P]laintiff's proffered reason" is correct, and Plaintiff must still allege facts supporting that the alleged discriminatory animus was the reason for the adverse action. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146–47 (2000); *accord Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 525 (E.D. Va. 2013) ("[A] plaintiff may not simply allege that the employer's stated reasons were inaccurate without also . . . establish[ing] through evidence or through an inference that the improper discriminatory motivation was the real reason.").

In her opposition to the Motion to Dismiss, Plaintiff merely rehashes her argument for retaliatory discrimination; she does not argue that Defendant treated her differently from male employees in not renewing her contract based on her sex. Indeed, Plaintiff's Complaint belies any argument that her non-renewal was based on sex discrimination, as Plaintiff listed both male and female employees whose contracts had been renewed despite the policy used to justify Plaintiff's non-renewal. Plaintiff has also not alleged any other facts to support her claim that she was treated more harshly than male counterparts.

Because Plaintiff has failed to allege facts supporting a plausible inference of sexual discrimination, Count I is **DISMISSED WITHOUT PREJUDICE**.

### B. Count II: Retaliation.

To state a claim for retaliation under Title VII, Plaintiff must have alleged sufficient facts to plausibly establish that: (1) she engaged in protected activity, (2) Defendant took an adverse employment action against her, and (3) there is a causal link between the protected activity and the adverse employment action. *Coleman*, 626 F.3d at 190. Defendant argues Plaintiff has failed to plausibly allege causation. Causation in retaliation cases can be established by either close temporal proximity or evidence of recurring retaliatory animus between the protected activity and the adverse employment action. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

While Plaintiff's protected activity was not temporally proximate to the nonrenewal of her contract, accepting the alleged facts as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently alleged recurring retaliatory acts in the intervening period to make causation plausible.

Plaintiff first engaged in protected activity in June 2017, when she complained about Workman's alleged sexual harassment. The next month, Plaintiff made further complaints about

7

Workman's alleged retaliatory conduct and his discussion of the investigation into her complaint, which she was told not to discuss but he was not. One month later, Plaintiff was informed that she would be transferred to a less desirable location for an unspecified amount of time (a) in violation of Defendant's normal policy, (b) despite Human Resource's prior statement that such a transfer would be viewed as retaliation, and (c) even though Defendant assigned two new nurses to Basra around the same time. Under these alleged facts, Plaintiff's transfer is evidence of retaliation. *See McClam v. City of Norfolk Police*, 877 F. Supp. 277, 282–83 (E.D. Va. 1995) (finding deviation from the company's policy evidence of pretext and causation).

After Plaintiff complained that her transfer was retaliatory, Defendant considered her complaint and eventually transferred her back to Basra on December 6, 2017. Four months later, Defendant allegedly devised another way to retaliate against Plaintiff, creating a policy to get rid of "toxic" employees like Plaintiff who complained about sexual harassment by not renewing contracts beyond three consecutive years. Defendant then allegedly used that policy as pretext to decline to renew Plaintiff's contract while it continued to renew other employees' contracts beyond three consecutive years as if the policy had never been implemented. Once Plaintiff quit, Defendant rescinded the policy, presumably because Defendant no longer needed the policy to justify not renewing Plaintiff's contract. While the four-month gap between Plaintiff's transfer back to Basra and the creation of the allegedly pretextual policy is some evidence against causation, Plaintiff has alleged earlier retaliatory conduct that Defendant eventually rethought and has alleged both direct and circumstantial evidence that Defendant's decision not to renew her contract was pretextual and based on retaliatory animus.

Plaintiff has thus alleged sufficient facts supporting a plausible claim for retaliatory causation. As a result, the Motion to Dismiss is **DENIED** as to Count II.

## C. Count III: Hostile Work Environment Based on Sex.

To state a claim for hostile work environment based on sex under Title VII, Plaintiff must have alleged sufficient facts to plausibly establish that: (1) "she experienced unwelcome harassment," (2) the harassment was based on her sex, (3) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere," and (4) "there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Defendant argues that Plaintiff's sexual harassment allegations are time-barred and that, regardless, Plaintiff has not sufficiently pled that the alleged harassment was severe or pervasive.

As noted above, Workman's alleged sexual harassment occurred well beyond the 300-day statute of limitations for Title VII claims. Plaintiff nevertheless argues that her sexual harassment allegations are not time-barred because of the continuing violations doctrine. Under the continuing violations doctrine, events occurring within the limitations period can "anchor" earlier acts if the incidents are "so significantly related to each other as to comprise one unitary and ongoing unlawful employment practice." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 621 (E.D. Va. 2011). In other words, the incidents must "involve the same type of employment actions, occur relatively frequently, and [be] perpetrated by the same managers" for the continuing violations doctrine to apply. *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 693 (E.D. Va. 2018) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120–21 (2002)) (alterations in original omitted). The other events comprising Plaintiff's hostile environment claim – Plaintiff's transfer to Baghdad and ultimate return to Workman's direct supervision – are not adequately linked to Workman's alleged sexual harassment because they involved different employment actions, were by different managers, and did not occur frequently. *Cf. id.* at 694

(finding that a plaintiff's non-selection for a supervisory role was not sufficiently related to the plaintiff's untimely claim of disparaging statements for the continuing violations doctrine to apply). As a result, Plaintiff's allegations of sexual harassment are time-barred.

Even if Plaintiff's allegations of Workman's sexual harassment were not time-barred, Plaintiff would still have not sufficiently pled that she suffered "severe or pervasive" harassment. Plaintiff has only alleged one specific incident of sexual harassment by Workman, where he "inappropriately touch[ed] her lower back." Compl. ¶ 20. "A single incident of unwelcome touching does not amount to an atmosphere 'sufficiently severe or pervasive to alter the conditions of employment' or 'create an abusive atmosphere,'" and while the alleged incident "might be temporarily uncomfortable," it was not "extremely serious." *Coleman v. Pentagon Fed. Credit Union*, 2017 U.S. Dist. LEXIS 39123, at *8–9 (E.D. Va. March 17, 2017). Indeed, Plaintiff appears to concede that she did not sufficiently allege "severe or pervasive" conduct, as she failed to respond to Defendant's argument in her opposition brief.

For these reasons, Count III is **DISMISSED WITHOUT PREJUDICE**.

### D. Count IV: Constructive Discharge.

To state a claim for constructive discharge under Title VII, Plaintiff must have alleged sufficient facts to plausibly establish that her working conditions were objectively intolerable and that Defendant's actions were a deliberate effort to induce Plaintiff to quit. *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006). "Constructive discharge claims are held to a high standard, and '[e]ven truly awful working conditions may not rise to the level of constructive discharge.'" *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 783 (D. Md. 2010) (quoting *Hill v. Verizon Md., Inc.*, 2009 WL 2060088, at *13 (D. Md. July 13, 2009)).

Plaintiff has failed to sufficiently allege that her working conditions were objectively intolerable. Plaintiff's alleged harassment by Workman, her treatment in the immediate aftermath of her sexual harassment complaint, and her transfer to Baghdad are too attenuated to demonstrate that "intolerable working conditions" existed at the time of her resignation. Similarly, Plaintiff's subsequent transfer back to Workman's supervision in Basra does not support her claim that her working conditions were objectively intolerable as she makes no allegations that Workman sexually harassed her following her transfer, Plaintiff subsequently requested that her contract be renewed, and Plaintiff worked under Workman seemingly without complaint for six months before quitting.

Defendant's nonrenewal of Plaintiff's contract, even if for pretextual reasons, also does not support a plausible claim for constructive discharge. Standing alone, an employer's decision not to rehire an employee for another year does not make the employee's working conditions objectively intolerable, even if the employer's decision was based on discriminatory animus. Plaintiff has also not demonstrated that her nonrenewal was a deliberate action by Defendant to induce her to quit; since Defendant had already secured Plaintiff's soon termination by not renewing her contract, there is not a plausible inference that Defendant was attempting to compel Plaintiff's resignation.

As Plaintiff has not pled sufficient facts to plausibly satisfy the high standard for a constructive discharge claim, Count IV is **DISMISSED WITHOUT PREJUDICE.**

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, Defendant's Motion to Dismiss (Dkt. 6) is **GRANTED** as to Counts I, III, and IV, which are **DISMISSED WITHOUT PREJUDICE**, and **DENIED** as to Count II.

It is **SO ORDERED**.

February 4, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge